## James W. Tyson vs. Lewis Shueey.

In ejectment or trespass when the controversy involves a question of location, and plats are used, certain rules of evidence have been established in this State which are not applicable when no plats are filed, and the dispute does not depend upon location.

Tyson *vs.* Shueey.

Where a *nar* in trespass alleges that the trespass was committed upon the "close of the plaintiff called Greyhound Forest," the plaintiff need not prove the lines or bounds of the whole tract; proving possession of *part* and a trespass on such part is all that is required.

The 10th section of the act of 1852, ch. 177, permits a party to declare in trespass upon the name which the land has acquired by *reputation,* and this allegation may be sustained by proof of such *reputation.*

Possession of the plaintiff by enclosures need not be proved where the trespass is charged against a party neither proving nor claiming title; in such case if the jury are satisfied that the land has been held and used by the plaintiff as his it is all the law requires.

Admissions of the defendant, who disclaimed title, that the *trespass* was committed by him, and that the land was the property of the *plaintiff,* is evidence from which the jury may infer that the land was in the possession of the plaintiff.

Possession under a parol lease, or bare possession alone as against a wrong doer without title, is sufficient to sustain trespass.

Alleging the trespass was committed upon his close of a particular name, is no allegation that the entire tract of that name is claimed by the plaintiff; in such case he is only required to show possession of that part of the tract on which the trespass was committed.

Where the *nar* describes the land by abuttals, or metes and bounds, it is necessary these should be proved as laid, but the plaintiff even in such case need not prove either his title or possession to the whole of the close; a right to such part as includes the trespass is sufficient.

In an action of trespass the defendant offered the prayer "that from the pleadings and evidence in the cause the plaintiff was not entitled to recover." HELD, that it could not, under this prayer, be argued in *this court* that there was no evidence the land was situated in the county where the suit was brought, because the record does not show that this point was raised and decided below.

Since the act of 1825, ch. 117, to authorize the reversal of any judgment on any point, it must *appear* from the record that such point was presented to the court below, and the judgment was rendered upon that point or question.

APPEAL from the circuit court of Frederick county.

This was an action of trespass *quare clausum fregit,* by the appellee against the appellant, instituted in Carroll and removed from thence to Frederick county. The pleadings and evidence in the cause are fully stated in the opinion of this court.

*1st Exception.* The defendant objected to the admissibility of that part of the evidence of the witness, Smith, which was offered to prove that the land on which the trespass was alleged

to be committed, was always reputed to be within the limits of "Greyhound Forest," and had always been known by general reputation in the neighborhood as part of Greyhound Forest, upon the ground that such testimony was not competent, under the pleadings, to prove the land trespassed upon was within the limits of "Greyhound Forest," unless the witness had seen "Greyhound Forest". run, or had had its lines or locations pointed out to him by some one. This objection the court (NELSON, J.,) overruled and admitted the testimony, and to this ruling the defendant excepted.

*2nd Exception.* Bennet, another witness proved, that the *locus in quo* is a part of a tract of land the reputed name of which is "Greyhound Forest," and that he never heard it called by another name. This witness also stated that he owned land within the limits of the tract reputed and known as "Greyhound Forest." To the admissibility of this testimony the defendant objected, and the objection having been overruled by the court, excepted.

*3rd Exception.* This exception was also taken by the defendant, to the refusal of the court to instruct the jury, "that from the pleadings and evidence in this case, the plaintiff is not entitled to recover."

1st. Because the plaintiff has not offered to the jury any legal and sufficient evidence that he had, at the time of the institution of this action and the committing of the supposed trespass, a legal title or actual possession of any land within the true lines of the tract of land, "Greyhound Forest," specified in his declaration.

2nd. Because the plaintiff has not proved to the jury the lines and actual location, either by parol or by actual survey of the tract of land called "Greyhound Forest," the tract of land described in his declaration.

3rd. Because the lines, boundaries and location of the tract of land called "Greyhound Forest," specified in the declaration, cannot be established by hearsay report, rumor, and general reputation, and because there is no legal and sufficient evidence in this case to authorise the jury in finding that the trespass complained of in the declaration, was committed

Tyson *vs.* Shueey.

by the defendant upon the land called "Greyhound Forest," or on any part thereof.

4th. Because the plaintiff has not proved by any legal and competent evidence that he, at the time of the supposed trespass, held and owned any land within the limits of a tract of land called "Greyhound Forest," and because there is no legal and sufficient evidence in this case to authorise the jury in finding a verdict for the plaintiff.

5th. Because the plaintiff has not proved and given in evidence to the jury, by any legal and competent evidence, that at the time of the supposed trespass complained of in his declaration, he had any title to or actual possession of the tract of land named and described in his declaration, or of any part thereof.

6th. Because the plaintiff has not proved to the jury, by any legal and competent evidence, facts legally sufficient to authorise the jury in finding a verdict for the plaintiff from the pleadings in the cause.

7th. Because the plaintiff's declaration is radically defective and bad on general demurrer, and not sufficient to entitle him to recover in the case."

The verdict and judgment were in favor of the plaintiff, and the defendant appealed.

The cause was argued before Le Grand, C. J., Eccleston and Mason, J.

*Geo. W. Dobbin* and *Jos. M. Palmer* for the appellant.

1st. The testimony excepted to in the first and second bills of exception, was improperly admitted because the limits of Greyhound Forest, could not be proved by reputation. 4 *H. & J.*, 128, *Carroll vs. Smith*. 2 *H. & J.*, 366, *Chapman vs. Brawner*. 7 *G. & J.*, 61, *Medley vs. Williams*. 1 *Chitty on Pl.*, 500, 503. 2 *Greenlf. on Ev.*, secs. 613, 618. 2 *Starkie on Ev.*, 802 to 804. The 10th section of the act of 1852, ch. 177, is supposed to obviate this objection, but that act has reference solely to the mode in which the case must be stated in the *nar*, and has no application to the *proof* necessary

Tyson *vs.* Shueey.

to sustain the plaintiff's case. It was intended to disembarrass *pleading*, but not in the slightest degree to enlarge the plaintiff's right as to *proof*.

2nd. Neither title nor possession of Greyhound Forest, was proved to be in the plaintiff at the time of the alleged trespass, and therefore the first, second and fifth, of the defendant's prayers should have been granted. Proof of title does not dispense with proof of actual possession. 2 *Starkie on Ev.*, 802. There must be possession of the *close* at the time of the alleged trespass, and the name of the close must be set forth. 2 *Starkie on Ev.*, 819. 6 *Mod.*, 117, 119, *Elwis vs. Lombe. Willes*, 222, *Lambert vs. Stroother.*

3rd. There was no evidence as to the location of Greyhound Forest, except that of general reputation, and there was no evidence that the alleged trespass was committed upon any part of Greyhound Forest, and the third prayer of the defendant should therefore have been granted.

4th. The venue in this case is laid in Carroll county, where the suit was originally brought. There is no evidence whatever, either that Greyhound Forest or any part of it was located in Carroll county, or that the alleged trespass was committed in Carroll county, and the sixth prayer of the defendant should therefore have been granted. This is a local action; it must be brought in the county where the land lies, and as an essential part of the issue, the land must be proved to be within the county as alleged. Of this there is no proof whatever in the record. The gravamen of the action is, that the defendant broke and entered the close of the plaintiff, called Greyhound Forest, "*lying and being in Carroll county.*" This allegation gave the court jurisdiction because the action is strictly local, and both allegations must be *proved*. This has not been done, for there is nothing about the land being situated in Carroll county in the testimony. The prayer sufficiently raises this question, and is not too general. There are two questions in reference to evidence, 1st, its sufficiency in law of which the court is to judge, 2nd, its sufficiency in fact of which the jury are the judges. 7 *G. & J.*, 20, *Cole vs. Hebb.*

Tyson *vs.* Shuecy.

*Jas. Raymond* and *Wm. P. Maulsby* for the appellee.

There are but two grounds upon which a reversal of this judgment can be asked. 1st, because there is not sufficient proof of the tract called Greyhound Forest, and 2nd, that there is no evidence that the land trespassed upon lies in Carroll county.

1st. The plea of *non cul* only puts in issue the *fact* of the trespass. If the possession or right of possession is intended to be put in issue, it must be done by a *special traverse.* 1 *Chitty's Pl.,* 519. The cases cited on the other side, to show that the boundaries of a tract of land cannot be proved by general reputation, are all cases where the defence was taken on *warrant* and surveys and plats were made. But such is not the present case, there is in this record nothing to show that there is any *patent* for Greyhound Forest, or that the tract has any other name than that which it has acquired by reputation. But if there could be any error in the ruling of the court below, in this respect, independent of the 10th section of the act of 1852, ch. 177, that certainly justifies the court's decision, for the proof is that by *reputation,* the land set out in the *nar* went by the name the *nar* gives it. That act permits the *nar* to set out the name acquired by *reputation,* and to sustain the averment of the *nar,* you must resort to *reputation* for proof, otherwise the act becomes a *trap.*

2nd, There is evidence in the record from which the jury may presume that the land lay in *Carroll county.* The witnesses say, that it was situated in *Pipe Creek Valley,* which is in Carroll county: this is a matter of *geography,* of which the jury will be presumed to have knowledge. Again, Smith and the other witnesses say, they went from the place where the trespass was committed to the *defendant's residence,* which must have been in the county where the suit was brought. But the courts take judicial notice, without proof of boundaries of States, and judicial districts. 1 *Greenlf. on Ev., sec.* 6. Presumptive evidence of venue is sufficient even in criminal cases. *Starkie on Ev.,* 16, 52. See also 7 *Term Rep.,* 583, *Mayor of London vs. Cole et al.* 2 *East.,* 575, *Stevenson vs. Lambard.* 1 *Saund. Rep.,* 246 (*b,*) 246, 248.

1 *Chitty's Pl.*, 271, 278.   1 *Greenlf. on Ev.*, *page* 8, *notes* 4, 5, 6, and act of 1835, ch. 256, creating Carroll county. Again the witnesses speak of the land and say that they know it is the land on which the *alleged trespasses were committed*, and the allegation of the *nar* is, that the trespasses were committed in Carroll county.   But no such question was presented in the court below, and none such can be raised here, since the act of 1825, ch. 117: the prayer is too general under this act to raise any such question.

ECCLESTON, J., delivered the opinion of this court.

This action of trespass *quare clausum fregit*, was instituted in Carroll county, and subsequently removed to Frederick.

The declaration contains but one count, which charges the defendant, now appellant, with breaking and entering the close of the plaintiff, called "Greyhound Forest," lying and being in Carroll county.   The defendant pleaded *non cul.*   No warrant of resurvey was issued, neither party having applied for one, and consequently the cause was tried without plats or locations.

Thomas Smith, a witness on the part of the plaintiff, stated that for twenty-five or thirty years he had known the land on which the alleged trespass was committed.   That in June 1852, he was at the place of the alleged trespass, when the plaintiff and defendant were both present; and the defendant fully admitted that he "had committed the trespass, and admitted that the land on which the alleged trespass was committed was the property of plaintiff.   That the quantity of land trespassed upon was spoken of as fifteen and five-eighths acres." This witness also gave evidence as to the quantity of wood and timber cut, and the value of it.   He likewise stated "that plaintiff owned about sixty acres of wood land, of which said fifteen and five-eighths acres was part."   And again, speaking of his being on the "said fifteen and five-eighths acres, when the plaintiff and defendant were present," the witness says "he has no hesitation in saying that the defendant admitted the said land to be plaintiffs.   That at said time defendant never made any claim to said land.   That defendant said he had cut

said timber unintentionally and was sorry for it." It appears from the testimony of this witness, that the defendant has land adjoining that of the plaintiff; and the witness owns some forty or fifty acres about a mile off. He says he had often passed through the plaintiff's woodland prior to the trespass.

Alluding a third time to the declarations of the defendant, Smith says, "defendant admitted that he had had said fifteen and five-eighths acres cut, that it was accidental, and that he wished to compensate plaintiff for it."

Levi T. Bennett, one of the plaintiff's witnesses, says he knew the land before the cutting and has known it since. He testifies in regard to the quantity and value of the wood and timber; and then says he "heard defendant say he was satisfied it was plaintiff's land, and was willing to pay what was fair for compensation. That plaintiff, defendant, Thomas Smith and Charles Hood, came to the home of the witness. That there was no dispute about the title."

The plaintiff again called Thomas Smith, and offered to prove by him, that the *locus in quo* was always reputed to be within the limits of "Greyhound Forest," and that said fifteen and five-eighths acres of land, on which the alleged trespass was committed, had always been known by general reputation in the neighborhood, as part of Greyhound Forest. To the admissibility of this evidence the defendant objected as not proper, under the pleadings, to prove the land on which the trespass is alleged to have been committed, was within the limits of Greyhound Forest, unless it could be shown that the witness had seen Greyhound Forest run, or that the lines or location of the tract had been pointed out to him by some one.

In ejectment or trespass, when the controversy involves a question of location, and plats are used in the cause, according to the practice, which in many respects is peculiar to this State, certain rules of evidence have been established, which are not applicable where no plats are filed, and the dispute does not depend upon location. All the Maryland authorities referred to by the appellant, to show that the court below erred in admitting the evidence, are cases in which plats were used. And the rules formerly applicable to such cases have been materially

changed, in several particulars by the act of 1852, ch. 177. On the present occasion, being on the premises, the defendant admitted that he committed the trespass, was willing to make reasonable compensation for the injury, making no claim whatever to any portion of the land, but admitted it to be the land of the plaintiff. This being so, and the *nar* charging the trespass as having been committed upon the close of the plaintiff called Greyhound Forest, it could not be necessary for him to do more than to prove that the *locus in quo* was part of that tract. There are cases where this might be done, by a witness who never saw the tract surveyed, or the lines pointed out. Suppose he had heard the defendant say, the trespass was within the limits of this tract, in order to admit such a declaration as evidence, would it be necessary to show that the defendant, or some one else had pointed out the lines of the whole tract, or that the witness had seen them surveyed? We think not. To prove that a parcel of land is part of a large tract, in a case of this description, there can be no necessity for proving, or that the witness should know what is the exact true location of the entire tract. A description of the close by name does not oblige the plaintiff to prove the lines or bounds of the whole tract called by that name; for such a *nar* does not necessarily assert title to, or claim possession of the entire tract; and therefore, proving possession of part thereof, and a trespass on such part is all that is required.

But it has been said in argument, that if the objection stated in the record, in regard to the absence of any evidence, that the witness had knowledge of the actual bounds of the tract called Greyhound Forest, was not sufficient to exclude the offered testimony, still it was not admissible, because the *locus in quo* could not be proved to be part of that tract by reputation. Several decisions of the late Court of Appeals, have been relied upon as as sustaining this view. But they were prior to the act of 1852, ch. 177. The 10th section of that act provides, "that it shall not be necessary to state the name by which lands may have been patented, in declarations, in action of ejectment, dower, trespass or case, but the same may be described by abuttals, course and distance, by any name it

may have acquired by reputation, or by any other description certain enough to identify the same."

If a party may declare upon the name which the land has acquired by reputation, by what possible means, or by what species of evidence can he sustain the allegation, except by resorting to proof of that very reputation which established the name? It would be a very useless provision, which says, a party shall not be required to insert in his *nar*, the patent name of his land, but may use that acquired by reputation, if he can give no evidence of such reputation

If in any action of trespass, this act can have the effect of rendering such evidence admissible, surely it must do so in the present suit, where the defendant has fully acknowledged the trespass, and admitted the *locus in quo* to be the property of the plaintiff; the only use to be made of the proof by reputation, being to show that the name of the land is the same, as that stated in the *nar*. In this state of the case, we think the court did right in receiving the testimony of Thomas Smith, which was objected to.

It appears from the second bill of exceptions, the plaintiff offered to prove by L. T. Bennett, that the land is part of a tract, "the reputed name of which is Greyhound Forest, and that he never heard it called by any other name." To a question propounded by the defendant, the witness said he owned land within the limits of the tract reputed and known as Greyhound Forest; and the defendant then objected to the admissibility of the testimony offered by the plaintiff, but the court admitted it. We understand that one ground of objection, urged below was, that the witness had an interest in the tract of land, and was therefore incompetent; but this objection has been waived, and the argument before us rests upon the grounds urged in opposition to the propriety of admitting similar testimony given by T. Smith. We have already said the court were right in receiving that, and for similar reasons we concur with them in admitting this.

Parol admissions or declarations of defendants, in regard to the title of real estate, have in some instances been held inadmissible, because such proof might be considered as violating the principles of the statue of frauds. The cases on this sub-

Tyson *vs.* Shueey.

ject are examined by Justice Sutherland, in·*Jackson vs. Cole*, 4 *Cow. Rep.*, 593, where he expresses the opinion, that in all those cases it will be found, "either that a title had been previously made out, which it was sought to divest by the parol admissions, contrary to the provisions of the statute of frauds, or it appeared from the acknowledgments themselves, that there had been written conveyances, and that the admissions, therefore, were not the best evidence that existed in the case." Under this qualification of the rule, for excluding proof of this sort, there could be no possible objection to the admissions of the present defendant. Not only was there no proof whatever of title in the present defendant, but whilst upon the premises he disclaimed title, and at the same time admitting the right of the plaintiff, he acknowledged the trespass to have been his act. And this in an action of trespass, where possession under a parol lease, or bare possession alone, as against a wrong-doer without any title whatever, is sufficient to sustain the suit, and the issue being upon the plea of *non cul.*

These remarks were deemed proper as preliminary to an examination of the seven reasons assigned by the defendant, why the court should have instructed the jury, "that from the pleadings and evidence in this cause, the plaintiff is not entitled to recover."

The first reason is, that the plaintiff had not offered any legal and sufficient evidence, that he had at the time of the institution of this action, and the committing of the supposed trespass, a legal title or actual possession of any land within the true lines of the tract of land called "Greyhound Forest," specified in the declaration. This was properly rejected as not sufficient to authorize the prayer. Proof of title was not necessary. And possession of the plaintiff need not be by enclosures, where the trespass is charged against a party neither proving or claiming title. If in such a case the jury are satisfied, that the land has been held and used by the plaintiff as his, that is all the law requires. The admissions of the defendant, that the land was the property of the plaintiff, and that the defendant had committed the trespass, he making no claim whatever of title or possession in himself, surely was some

evidence before the jury, from which, if believed by them, in the entire absence of any conflicting proof, they might be justified in arriving at the conclusion, that the land was in the possession of the plaintiff.· It was no trespass by the defendant, in regard to the plaintiff unless he had possession, and if he had it was a trespass.    The defendant acknowledged *the trespass* was committed by him, admitted the plaintiff's right to the property, and was willing to make compensation for the injury.    With such proof in the cause, and considering as it will be seen we do, that the court below did right in receiving proof of the reputation of the neighborhood, that the *locus in quo* was part of the tract of land named in the *nar*, it would be carrying the authority of the court to a very unwarrantable extent, were we to say the case should have been taken from the jury, and decided by the court, because there was no legal and sufficient evidence, that the plaintiff had either a legal title or actual possession of any land, within the true lines of the tract of land called Greyhound Forest, specified in the declaration.

The *second* reason is, "because the plaintiff has not proved to the jury the lines and actual location, either by parol or by actual survey of the tract of land called "Greyhound Forest," the tract of land described in the plaintiff's declaration, &c."

We agree with the court below in refusing to sustain this proposition.    Because notwithstanding the plaintiff described his close by the name of Greyhound Forest, that did not impose upon him the obligation under the pleadings and proof in this cause, to prove "the lines and actual location" of the whole tract called by that name.    Alleging the trespass to have been committed upon his close of a particular name, is no allegation that the entire tract known by the same name is claimed by him.    Under such a *nar* and in a case like this, all that is necessary for him to do, is to show he has possession of that portion of the tract on which the injury was committed.    If he had described the close by abuttals, perhaps he would have been required to prove them as stated.

When the *nar* describes the land by abuttals, or metes and bounds, it is necessary these should be proved as laid, because they afford the only means by which the defendant is noti-

fied of the place, in which he is charged with committing the injury. But although such proof is required, the plaintiff is not bound to prove either his title or possession to the whole of the close. A right to such part as includes the trespass is sufficient. 1 *Greenlf.*, *Ev. sec.* 62. *Bull. N. P.* 89. *Tapley vs Wainright*, 5 *B.* & *Adol.*, 395, in 27 *Eng. C. L. Rep.*, 99. If instead of abuttals the name is given, that is notice to the defendant of the close, for the trespass on part of which the suit is brought. And if the plaintiff can prove his possession of such part of the close named, as has been trespassed upon he will succeed, without being obliged to show the exact limits of the entire close, or to establish his right to the whole of it. See *Tapley vs. Wainright*, and also, 8 *Mees.* & *Wels.*, 381, *Smith vs. Royston.* 2 *Barn.* & *Adol.*, 99, *Bassett vs. Mitchell* & *Smith.* 9 *Dow.* & *Ry.*, 495, *Cooke vs. Jackson.*

According to the decision of Lord Denman, in *Tapley vs. Wainright*, the term close in a *nar* is a divisible allegation, so that the plaintiff by the use of that word, is not compelled to prove injuries upon the entire close, but may recover for damage done to such parts as he can show have be entrespassed upon. The language in the replication was under consideration in that case, but the court speak of the rule in regard to a *nar*, and then apply it to the replication.

We will next consider the sixth reason, which is: "Because the plaintiff has not proved to the jury, by any legal and competent evidence, facts legally sufficient to authorise the jury in finding a verdict for the plaintiff from the pleadings in the cause." This is nothing more than a repetition of the prayer itself, in different language, for that asks an instruction, "that from the pleadings and evidence in this cause the plaintiff is not entitled to recover."

The defendant, however, insists that the instruction should have been given for this sixth reason, inasmuch as the venue is laid in Carroll county, and there is no evidence whatever that the land on which the alleged trespass was committed is in that county. This view has been opposed upon the ground that the question was not raised below.

It is perfectly evident that the act of 1825, ch. 117, was designed, in common law cases, to make the Court of Appeals

strictly an appellate tribunal, confining them to the consideration of the very questions submitted to the courts below, intending thereby to prevent surprise and injury in consequence of having points raised above which were never heard of below, and which, if they had been, the parties injuriously affected by them could, without difficulty, have remedied, by further proof, or by amending the pleadings, or otherwise. That such was the object of the act is apparent from its provisions, and is most explicitly declared by Judge Archer, in delivering the opinion of the court in *Davis vs. Leab,* 2 G. & J., 306.

And in *Grahame and Parran, vs. Harris, Parran & Co.,* 5 G. & J., 494, having repeated a portion of the 1st section of this act, Chief Justice Buchanan says: "The provision, it will be seen, is not that the Court of Appeals shall not reverse any judgment on any point or question which shall *appear not* to have been presented to the county court, but 'which *shall not appear* to have been presented to the county court.' So that to authorise this court to reverse any judgment of a county court on any point or question, it must appear to this court that such point or question was presented to the county court, and that the judgment was rendered upon that point or question."

In *Leopard vs. Chesapeake and Ohio Canal Company,* 1 *Gill,* 227, Judge Dorsey says: "We are not permitted to affirm or reverse the judgment of the county court, upon any point which is not shown by the record to have been there raised and decided." And on page 228, the learned judge reiterates very much the same views which had been announced in *Davis vs. Leab,* as to the leading motive of the legislature in passing the act of 1825. He speaks of the act as intended to remedy an evil severely felt and loudly complained of. This evil being the reversal of judgments of the county court upon points never raised or decided there, and which, if they had been, would, by amendment or otherwise, have been at once obviated.

Having before us such clear expositions of the meaning of

the statute, and of the evil designed to be removed by its adoption, there can be but little difficulty in ascertaining whether the question which has been argued is proper for our consideration and decision, in the view presented by the appellant. Does the record show that this point was raised and decided below? Is it a fair and legitimate inference, from the circumstances, that the circuit court was urged to grant the prayer, because there was no proof that the trespass was committed upon land situate in Carroll county? These interrogatories, we think, cannot be answered affirmatively. If such a defect in the plaintiff's proof had even been hinted at, it is fair to presume the deficiency would have been supplied immediately. The *nar* states the land to be in that county, and, in reality, we suppose there is not a shadow of doubt on the subject. The witnesses actually examined in the trial were acquainted with its locality, one of them having known it for twenty-five or thirty years, and owning land but a short distance from it, the other owning part of the same tract. And as this is a local action which must be instituted in the county where the injury has been committed, and is so stated by every elementary writer on the subject, to suppose for a moment that this was unknown to the plaintiff's counsel would not only be a want of courtesy, but an act of gross injustice. Instead, therefore, of being justified in reversing the judgment upon this question, under a belief that the record shows it was raised below, or even warrants a supposition that it may have been, we think it would be closing our eyes against the fair and irresistible inference from the circumstances, not to conclude that the point never was agitated in the circuit court, and of course it is no ground for reversal.

It is needless to notice, particularly, the third, fourth and fifth reasons, because what has been said in regard to the others is deemed sufficient to show our concurrence with the circuit court in their decisions upon these.

The seventh reason is not referred to in the printed points presented by the appellant's counsel, neither was it urged in argument. We therefore consider it as virtually abandoned.

*Judgment affirmed.*